UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MELODY CALLANTINE, on behalf of herself, her minor children K.C. and L.C., and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>4E BRANDS NORTH AMERICA, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 3:20-cv-00801-DRL-MGG<br>)<br>)<br>)<br>) |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**I.      INTRODUCTION**

This is a class action brought on behalf of Indiana consumers who purchased 4e Brands hand sanitizer which contained the poisonous chemical methanol. The class claims target statutory violations of the IDCSA where 4e Brands' products were placed on the market with deceptive misrepresentations relating to the active ingredients, effectiveness, and safety of its hand sanitizer.

The questions that must be answered in the present motion are those that are set forth in FRCP 23. Namely, does the proposed class satisfy the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy of representation, and moreover, does it meet the Rule 23(b)(3) tests for predominance and superiority. In the event that Plaintiff's proposed class is certified, the primary issues on the merits of the claims will consist of (a) whether 4e Brands' acts in the distribution of the hand sanitizer constitute to a statutory violation of the IDCSA and (b) identifying the full extent of affected consumers whose product was actually contaminated with methanol.

1

In its response to the Motion for Class Certification, Defendant fails to refute that the requirements for class treatment of this case are met for Plaintiff's IDSCA claims. Often, Defendant improperly conflates the analysis of whether Plaintiff's claims are amenable to class-wide treatment with the ultimate issues of proof on the merits. And its unsupported contentions that class treatment is not warranted are directly contradicted by Defendant's own recall notices, admissions in its prior filings, and Plaintiff's evidence. Based upon the facts and claims at issue in this case, the Court can readily determine the appropriateness of class treatment. The Motion for Class Certification should be granted.

## II. ARGUMENT

### a. Undisputed evidence and the Defendant's own admissions establish that numerosity exists under Rule 23(a)(1).

The requirement of numerosity is plainly satisfied in this case. The Defendant has admitted as much. Specifically, the Defendant removed this case to federal court under the Class Action Fairness Act ("CAFA"), which requires that the class be composed of more than 100 members. 28 U.S.C. § 1332(d)(5)(B). Stating that this requirement was satisfied, Defendant noted that between March 2020 and July 2020, "at least 100,000 units of the Product (and up to 300,000 units) were distributed through retailers and other distributors in Indiana . . . meaning that the proposed class *necessarily includes at least 100 members.*" (DE # 1 at ¶24 (emphasis added)). Defendant continued "for the class to be capped at 99 members, even at the low end of the Product distribution range of 100,000 units, each member would need to have purchased 1,010 units of the product." (*Id.*). Defendant claimed that "[s]uch an inference is untenable," and Plaintiff agrees. Similarly, as to the amount in controversy requirement, Defendant noted that the class would reach the CAFA threshold of $5,000,000.00 with just 10,001 affected individuals, which would "not

2

account for the thousands of other units of Product sold in the state." (*Id.*).  Thus, "the volume of the Product sold in the state" *still* yields only one reasonable conclusion:  that the numerosity requirement is satisfied in this case.  *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (stating that the numerosity requirement of Rule 23(a) will generally be satisfied by a class of forty or more individuals).

Defendant now argues otherwise, expediently pivoting to a counter-narrative that "the vast majority of [the] units were not contaminated."  (*Id.* at 10).  Specifically, it asserts that "in reality, only the lots identified in the limited initial recall had any potential contamination" and the second recall was done only "*out of an abundance of caution*."  (*Id.* at 2).  Even if this were true, contamination of a mere fraction of the hundreds of thousands of units shipped into Indiana is all that is required to establish numerosity.  But the evidence confirms that the initial recall was anything but "limited."  Defendant's internal Impact Assessment states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Exhibit G - Impact Assessment at 4EBNA-024659).  The FDA recall announcement confirms that over two hundred lots were affected.  See https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/4e-brands-north-america-issues-nationwide-voluntary-recall-hand-sanitizer-due-potential-presence.

And the second recall was not merely precautionary.  Rather, further testing of lots manufactured in May 2020 indicated higher than allowable methanol levels in some additional lots, leading to a halt in production and the second recall.  (Exhibit G - Impact Assessment at 4EBNA-024659).  Neither the Plaintiff nor any other putative class member can be summarily excluded from the class on the mere assertion that no bottles subject to the second recall were

3

contaminated. (DE # 39 at 2). Like the first recall notice, the second stated that the products "are being recalled due to the potential presence of methanol (wood alcohol)." (DE # 39-3 (Def. Ex. C at 1)). A May 12, 2020 email produced in discovery by 4e Brands identifies the Plaintiff's lot ████████████████████████████████████████████ (Exhibit H - May 12, 2020 Email) ████████████████████████████ ; (Exhibit I - Melody Callantine Affidavit, at ¶ 6) (identifying her bottle as containing lot number 2378). Unfortunately this measure was unsuccessful or too late to capture all bottles from the lot, and Plaintiff ultimately purchased her bottle from Costco in July 2020. (Exhibit I – Callantine Aff., ¶ 3). After Plaintiff's family used the product, her children became ill and were treated for symptoms consistent with methanol poisoning, including headaches and vomiting. (*Id.* at ¶ 7). Ms. Callantine also subsequently learned that a chemical analysis of the bottle confirmed the presence of methanol. (*Id.* ¶ 10). Considering the evidence, the notion that an "*abundance of caution*" recall automatically excludes Plaintiff and many others from the class simply does not hold.

The scope of the recall was extraordinary, and the contamination of a fraction of a percent of the 100,000 to 300,000 bottles shipped to Indiana would satisfy numerosity. Even with Defendant's unsupported attempts to carve up the scope of its own recalls, the only reasonable conclusion is that the number of affected individuals is far more than the required number of forty. The ultimate accounting of affected consumers can be readily accomplished in the merits portion of the case. The preponderance of the evidence—together with common sense and good faith estimates—establish that the class is sufficiently numerous. *Cf. Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 329 (N.D. Ill. 1995) (noting "the court is entitled to make common

sense assumptions" and "good-faith estimates" when analyzing numerosity).

### b. Plaintiff's IDCSA claim is based upon issues that are common and typical of the entire class.

The Defendant's contention that the class claims lack commonality and typicality falls similarly flat. Simply, the IDCSA expressly contemplates class actions for this very situation because the claims of class members are quintessentially common and typical. IC 24-5-0.5-4(b). Puzzlingly, Defendant claims that Plaintiff failed to support the "assumption" that all class members relied upon the Defendant's alleged representations on the bottles. (DE # 39 at 12). But this contention ignores that Plaintiff designated the human factors report of Dr. Anthony D. Andre who opined *just that*. (DE # 33-1). Specifically, Dr. Andre concluded that the product "was labeled in such a way as to induce the perception of safety among consumers" such that a reasonable consumer would assume that the "product was safe and helpful, not dangerous and harmful." (*Id* at 11). This expert testimony regarding the product labeling and consumer expectations is unrefuted. Indeed, the Defendant failed to proffer any contrary expert opinion on the subject and cannot identify any "dissimilarities" among the class in this respect.

Nor could it. Plaintiff does not claim that Defendant made any individualized representations to consumers apart from what was contained on the packaging when the hand sanitizer was distributed to be sold in Indiana. Plaintiff's position vis-à-vis Defendant is identical to all of the other class members: she is a purchaser of a product which purported to be one thing but turned out to be the opposite. Any analysis of reliance or damages under the IDCSA will be based upon the common operative facts. *See Allen v. Conagra Foods, Inc.,* 331 F.R.D. 641, 669 (N.D. Cal. 2019) (applying Indiana law: "no such individual inquiries will be necessary because all consumers were exposed to the same statements on the Parkay Spray label. Consumers from

5

Indiana can remain part of the subclass.") (subsequently decertified for jurisdictional reasons).

Moreover, the mere fact that Plaintiff and her family sustained physical injuries from the use of the hand sanitizer product is inconsequential to certification of Plaintiff's consumer claims. (*See* DE # 39 at 12-13). The scope of the motion for class certification is limited to the claims under Indiana's Deceptive Consumer Sales Act I.C. 24-5-0.5 *et seq.* A supplier violates the IDCSA when it engages in deceptive acts and representations regarding the subject of a consumer transaction, including that a product: (a) has characteristics, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have: and (b) is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or reasonably should know that it is not. I.C. § 24-5-0.5-3(b)(1)-(2). The act provides for damages as follows: "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater." I.C. § 24-5-0.5-4(a).

For purposes of the IDCSA claims, the remedy available to Plaintiff is the same as all other class members: she can recover her *actual damages as a consumer* resulting from the deceptive act or five hundred dollars. The common injury suffered by the putative class members as consumers for the purposes of the statutory claim is identical. That is, all suffered economic losses when purchasing a product that was not only worthless, but harmful. The existence of any related claims for personal injury does not set Plaintiff apart or confer any extra benefits that are not available to any other class member. In a consumer class action such as this, Plaintiff is on equal footing with the remaining members and there is no likelihood of inadequate protection under Rule 23(a)(4). And class certification is appropriate because "the defendants have engaged

in standardized conduct towards members of the proposed class," *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998), and the "named representatives' claims have the same essential characteristics as the claim of the class at large," *Muro v. Target Corp.,* 580 F.33d 485, 492 (7th Cir. 2009). Indeed, it is expressly contemplated by the Indiana General Assembly.

### c. Common questions predominate and class certification is superior to other methods of adjudication

The crux of Plaintiff's class claim is that Defendant violated the IDCSA by distributing a hand sanitizer product that contained poisonous methanol rather than ethanol as its active ingredient. The basis for liability under the IDCSA stems from facts and representations on the product that are common across all class members. Moreover, because the individual stakes of each purchaser's claims are relatively small, this is precisely the sort of claim that the Seventh Circuit has identified as amenable to class-wide treatment. *See Crawford v. Equifax Payment Servs.,* 201 F.3d 877, 880 (7th Cir.2000) ( "Because [Fair Debt Collection Practices Act cases] are small-stakes cases, a class suit is the best, and perhaps only way to proceed.").

Defendant does not deny the broad contours of this argument but asserts that Plaintiff has not made a sufficient showing that these claims can be proved on a classwide basis. (DE # 39 at 15). To begin with, Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, the rule presupposes the existence of individualized questions and merely "requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 815 (7th Cir. 2012). Here, all class members have identical statutory claims based on the same deceptive acts, which is amenable to class treatment. IC 24-5-0.5-4.

Indeed, given the nature of the claims and the alleged misrepresentations, nearly all of the analysis on liability will hinge on conduct that occurred before the hand sanitizer left Defendant's possession. ███████████████████████████████████

███████████████████████████████████

███████████████████████████. (Exhibit G - 4EBNA-024651).

███████████████████████████████████

████████████████████ (*Id.*). ███████████

███████████████████████████████████

█████████████████████████████ (*Id.* at 4EBNA-24660). All of this conduct would have taken place outside of the presence of any individual class member and occurred before any of the contaminated product even reached store shelves in the state of Indiana.

Elsewhere in its response, Defendant contends that relatively few claims were preserved in the process of the bankruptcy proceedings. (DE # 39 at 10-11). As noted, however, Plaintiff preserved the claims of putative class members by filing a class proof of claim and neither 4e Brands nor the trustee filed an objection to the claim. (*See* DE # 33 (Pl.'s Br., at § II); 33-2; 33-3). Thus, these claims were preserved to the extent of available insurance coverage. Moreover, this fact truly underscores the predominance and superiority of class treatment in this case. Given the burden and expense of filing thousands of individual claims in the bankruptcy claims process versus the relatively minor financial stakes for any individual plaintiff, it is little wonder that so few parties would have successfully preserved their claim if not for Plaintiff's representative action. The Seventh Circuit has observed that preserving claims of putative class members

8

through class proofs of claim is "an argument in favor of the class action device" because it preserves claims of those entitled to compensation "without surplus paperwork." *Matter of Am. Rsrv. Corp.*, 840 F.2d 487, 490 n.3 (7th Cir. 1988). That rationale squares perfectly with the core policy of the class action mechanism which is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods. v. Windsor,* 521 U.S. 591, 617 (1997); *see also Smith v. Short Term Loans, LLC,* No. 99C1288, 2001 WL 127303, 2001 U.S. Dist. LEXIS 1554 (N.D.Ill. Feb. 14, 2001) ("Where, as here, the defendant engaged in standardized conduct . . . that affected many consumers, but where an individual consumer's claim would be too small to justify bringing an individual suit, a class action is particularly suited to the resolution of the consumers' claims.").

    **d. The class is sufficiently defined and is neither overbroad nor an improper "fail-safe" class.**

The Defendant's complaint that the class definition is simultaneously "fatally overbroad" and "fail-safe" also cannot withstand scrutiny. Indeed, it relies on the contradictory assertion that the class includes persons who have *no* claims while at the same time consisting of *only* persons with *valid* claims. (DE # 39 at 7-9). Of course, neither claim is correct. Contrary to Defendant's assertion, the class definition is not inclusive of all consumers that purchased a recalled bottle of sanitizer, who the Defendant claims lack standing. Rather, the class definition is expressly limited to purchasers of *contaminated* hand sanitizer. (DE # 32 at 1-2). The putative class members therefore possess standing to allege claims that their bottles were deceptively mislabeled. Simply, no overbreadth problem exists within the class as defined.

And individualized inquiries are not required to determine whether putative members fall within the class. ████████████████████████████████████████

███████████████████████████████████████████████. (Ex. G - 4EBNA-024648 and 024660). ███████████████████████████████████████████████████████

███████████████████████████████████████████████ (Ex. G - 4EBNA-024648). The process for identifying affected class members would be much the same as the process that allowed Defendant to define the parameters of its initial recall by lots and that prompted subsequent actions. These inquiries are necessarily *not* individualized but are based on product lots. To the extent that any purchasers have an independent basis of proof apart from Defendant's records and the FDA's investigatory process, they too have valid claims subject to proof on the merits. But this does not mean that identifying class members requires broad-based individual inquiries.

Nor does limiting the class to purchasers of contaminated sanitizer render the class an impermissible "fail-safe" class. (DE 39 at 8-9). A fail-safe class is defined "in terms of success on the merits" such that the class members either win or are defined out of the class and therefore not bound by the judgment. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). Defendant fails to explain how this dynamic is present here. Indeed, the class is not comprised by reference to purchasers who "ha[ve] a valid claim under Plaintiff's IDCSA theory." (DE 39 at 9). Rather than tracking the merits of claims, the class definition logically groups consumers who suffered identical harm. As in *Mullins*, it "identifies a particular group of individuals . . . harmed in a particular way . . . during a specific period in particular areas." *Id.* at 660-61. If the claims fail on the merits because Defendant's conduct did not violate the IDCSA, all class members claims will fail and *res judicata* will bar class members from re-litigating these same claims. As a result, the class is not a fail-safe IDCSA class. *Cf. Lanteri v. Credit Prot. Ass'n, L.P.,* No. 1:13-

10

CV-1501-WTL-DKL, 2016 WL 4394139, at *1 (S.D. Ind. Aug. 17, 2016) (noting that a fail-safe class is one in which "the class definition proposed by the Plaintiff in essence tracks the language of the statute that she alleges the Defendants violated[.]").

Regardless, any potential problems with the class definition would be more appropriately addressed by modifying the class definition, not denying class certification altogether. In this respect, the Seventh Circuit instructs as follows:

> Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). The class definition is appropriately tailored and even if it were to need some modification, class certification is appropriate.

### III. CONCLUSION

For the foregoing reasons, the proposed class meets the requirements of Rules 23(a) and 23(b)(3). Plaintiff respectfully requests that this Court certify this action as a class action.

Respectfully submitted,

PFEIFER MORGAN & STESIAK LLP

/s/ Peter D. Hamann
Douglas E. Sakaguchi (20352-71)
Ryan G. Milligan (28691-71)
Peter D. Hamann (34615-45)
PFEIFER MORGAN & STESIAK LLP
53600 N. Ironwood Road
South Bend, Indiana 46635
Tel. 574.272.2870

Fax 574.271.4329  
DSakaguchi@pilawyers.com  
RMilligan@pilawyers.com  
PHamann@pilawyers.com  

### **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2024, I electronically served the foregoing document using the Pacer Filing System (IEFS). I further certify that the following persons were served on the same date using Pacer:

Mr. Scott Cockrum  
Mr. Corban Cavanaugh  
Lewis Brisbois Bisgaard & Smith LLP  
221 Main Street, Suite 3-2A  
Highland, IN 46322  

/s/ Peter D. Hamann