UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MELODY CALLANTINE, on behalf of herself, her minor children K.C. and L.C., and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>4E BRANDS NORTH AMERICA, LLC,<br><br>Defendant. | CAUSE NO. 3:20-CV-801 DRL-SJF |

OPINION AND ORDER

Melody Callantine asks the court to certify a class for claims under the Indiana Deceptive Consumer Sales Act (IDCSA), Ind. Code §§ 24-5-0.5-1 *et seq.*, against 4e Brands North America, LLC. She alleges that 4e committed a deceptive act when it sold her and others harmful, methanol-containing hand sanitizer it represented as safe, effective, and containing ethyl alcohol. 4e opposes class certification. After a rigorous analysis and satisfied that the applicable rules have been met, *see* Fed. R. Civ. P. 23(a)-(c); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011), the court certifies a class.

BACKGROUND

According to the pleadings, 4e is a Texas corporation that distributed hand sanitizer in Indiana labeled and sold under the brand name Blumen. Its labels made various claims, including that the active ingredient was 70 percent ethyl alcohol [33-1 at 8]. Ms. Callantine purchased Blumen hand sanitizer in Indiana in July 2020, test results showed it contained methanol, and she and her two children sustained injuries from the product consistent with methanol poisoning [3 ¶ 11-12; 44-3 at 1-2]. She claims the FDA tested some Blumen hand sanitizer products that same month, discovered methanol, imposed an import ban, and recommended a recall [3 ¶ 13-14]. 4e voluntarily recalled certain Blumen hand sanitizer products that month [*see* 7 at answer to ¶ 15].

According to a 4e investigation report, this methanol contamination arose after 4e faced an ethanol supply shortage at the beginning of the COVID-19 pandemic in April 2020 and solicited ethanol from new suppliers [44-1 at 1]. The report says 4e tested for ethanol in the new supply batches using a method that didn't distinguish between ethanol and methanol [*id.* 5]. This resulted in methanol-contaminated hand sanitizer being distributed in Indiana to customers [3 ¶ 17; *see also* 33-5 ¶ 7-9].

In August 2020, Ms. Callantine filed a lawsuit on behalf of herself, her minor children, and all others similarly situated against 4e in St. Joseph Superior Court in Indiana. The suit brought claims under the Indiana Products Liability Act and IDCSA. 4e promptly removed on diversity jurisdiction under the Class Action Fairness Act (CAFA). *See* 28 U.S.C. § 1332(d). In February 2022, 4e filed for bankruptcy in Texas; that July, Ms. Callantine filed an unopposed proof of claim on behalf of herself and others similarly situated [33-2; 33-3 at DE 241-249], and that October the bankruptcy court confirmed the company's disclosure statement and liquidation plan [33-4].

Ms. Callantine moved for class certification of the IDCSA claims on March 15, 2024. The IDCSA punishes certain deceptive statements from suppliers of consumer products, including statements describing a product's characteristics or quality that the supplier knows or should know are false. *See* Ind. Code §§ 24-5-0.5-3(a), (b)(1), (b)(2). A consumer who relies on such a deceptive statement can sue for the greater of actual damages or $500 in statutory damages (if the deception was willful, the remedy is the greater of treble damages or $1,000). *See* Ind. Code § 24-5-0.5-4(a). Ms. Callantine's IDCSA class action asserts that 4e violated the IDCSA by representing in writing that its hand sanitizer (1) contained only ethyl alcohol as its active ingredient, (2) contained 70 percent ethyl alcohol, (3) contained no methanol, and (4) killed 99.99 percent of germs [3 ¶ 38].

To support her motion, Ms. Callantine offers certain documents. These include a report from a putative expert in human factors and ergonomics concluding 4e's hand sanitizer was labeled such that customers assumed it was safe [33-1]; excerpts from a 4e internal report detailing the supply, testing, and

2

control issues that led to the methanol contamination [44-1]; and an internal 4e email identifying noncompliant product lots [44-2]. She also files an affidavit explaining her hand sanitizer purchase, health impacts on her and her family, and testing performed on the product to confirm that it contained methanol [44-3].

On May 10, 2024, 4e filed its response opposing class certification. Ms. Callantine filed a reply on June 14, 2024. Ms. Callantine also filed a motion to seal certain sensitive information in her briefs and exhibits. The court now decides these motions.

## STANDARD

District courts have "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Riffey v. Rauner*, 910 F.3d 314, 318 (7th Cir. 2018). To satisfy Rule 23(a), Ms. Callantine must show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In short, a plaintiff must show "numerosity, commonality, typicality, and adequacy of representation" by a preponderance of the evidence. *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338 (7th Cir. 2023). Class certification is not appropriate unless the named plaintiff establishes all four prerequisites. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

Under Rule 23(a), a plaintiff is not required to show any likelihood of success on the merits. *Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022). If a plaintiff "meets this threshold, the class *must* be certified, even if it is sure to fail on the merits." *Eddlemon*, 65 F.4th at 338 (citation and internal quotations omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (citation omitted).

A plaintiff seeking to certify a class must also show that Rule 23(b) is satisfied. Ms. Callantine seeks to proceed under Rule 23(b)(3), which requires "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In evaluating this, the court considers the members' interests in bringing their own actions, the nature of existing litigation, the desirability of concentrating litigation in the forum, and the difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D). Importantly, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459. A Rule 23(b)(3) certification "is not to adjudicate the case" but rather "to select the method best suited to adjudication of the controversy fairly and efficiently." *Id.* at 460 (quotations omitted).

## DISCUSSION

Ms. Callantine defines the putative class as all Indiana residents who, within two years of filing this action, purchased any type of Blumen hand sanitizer placed into the stream of commerce by 4e Brands or its affiliates or related companies that contained methanol as an active ingredient [32 ¶ 3]. She requests that she be appointed class representative and that her attorneys be appointed class counsel. 4e argues that she fails to satisfy the Rule 23 requirements for class certification.

A. *The Proposed Class is Ascertainable and Not a "Fail-Safe" Class.*

4e first says the proposed class definition is overbroad and describes a "fail-safe" class. These arguments of so-called "ascertainability" bear on the "implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). "Class definitions have failed this requirement when they were too vague or subjective, or when class membership was defined in terms of success on the merits (so-called 'fail-safe' classes)." *Id.* "To avoid vagueness, class definitions generally need to identify a particular

4

group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660 (citations omitted). The "subjectivity problem" can be avoided "by defining the class in terms of conduct (an objective fact) rather than a state of mind." *Id.* (citations omitted). One avoids "fail-safe classes" by defining them "so that membership does not depend on the liability of the defendant." *Id.*

This proposed class is defined, both clearly and specifically, to include any Indiana resident who bought methanol-contaminated hand sanitizer from 4e over a specific period. The criteria are objective; for example, one depends on whether the hand sanitizer contained methanol. And it is not a "fail-safe" class, defined in terms of success on the merits. Such a definition would be more conclusion-dependent on the merits, such as members who "relied on a false representation by 4e about its products characteristics." Instead, under Ms. Callantine's proposed definition, whether the member purchased hand sanitizer containing methanol is merely the start of the inquiry, given that liability rests on whether 4e committed a deceptive act under the IDCSA.

4e also argues the proposed class definition isn't administrable. It says the definition would require individualized inquiries to determine whether each prospective class member's hand sanitizer contained methanol. But administrative feasibility is not part of the ascertainability inquiry under applicable law. *Id.* at 657-58 (declining to adopt this "heightened" requirement). The court revisits this issue in its assessment of Rule 23(b). *See id.* at 658 (observing that administrability is better addressed under superiority while "balance[ing] countervailing interests"). 4e also argues that there is no proof that Ms. Callantine's product even contained methanol and that her motion rests on supposition, but she submits an affidavit and test report that shows her product contained methanol [44-3]. The proposed class is ascertainable. Accordingly, the court proceeds to evaluate it under Rule 23(a).

B. *The Proposed Class is Sufficiently Numerous under Rule 23(a).*

Ms. Callantine must establish numerosity. The proposed class must be large enough to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020). "While

5

there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). Ms. Callantine claims there are thousands of affected class members. She asserts this based on discovery from 4e that it distributed 100,000 to 300,000 units of Blumen hand sanitizer through retailers and other distributors for sales to consumers. She says the class would have ample members even if only a fraction of these units were purchased before the recall.

4e responds that these claims are impermissibly speculative and conclusory. But 4e relied on the same evidence in its removal notice to claim that "the proposed class necessarily includes at least 100 members" and that to infer a smaller class would be "untenable" [1 ¶ 24]. Moreover, to justify the amount-in-controversy for removal under CAFA, 4e claimed the class must include at least 10,001 individuals [1 ¶ 26-27]. These amounts typically satisfy numerosity. *See Mulvania*, 850 F.3d at 859. The court will not permit 4e to argue the proposed class is numerous and then, "simply because [its] interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (describing judicial estoppel) (quotation omitted); *see Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 659-60 (7th Cir. 2004) (applying judicial estoppel in the class action context). This self-contradiction aside, the record establishes a sufficiently numerous class, including an impact assessment that identifies numerous lots of methanol-infected product and other lots subject to the FDA recall [44-1]. *See* Fed. R. Civ. P. 23(a)(1).

    C.  *There are Questions of Law or Fact Common to the Proposed Class under Rule 23(a).*

Ms. Callantine also must show commonality between her claim and those of prospective class members. This requires "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), the resolution of which would address a "central" issue, *Wal-Mart*, 564 U.S. at 350. "[T]he plaintiff [must] demonstrate that the class members have suffered the same injury." *Id.* at 349-50 (citation and quotations omitted). Even a "single common question" will suffice. *Id.* at 359 (brackets omitted). In turn, the court

must determine "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation and quotations omitted).

When "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (collecting cases). For example, in *Suchanek*, the court identified that the consumer deception claims there all arose from a single course of conduct (the defendant's marketing and packaging) and that the same legal standards (those in the applicable state consumer protection laws) governed every class member's claim. *Id.* The common question was whether the packaging would deceive a reasonable consumer, *id.* at 758, and "the claims of every class member [would] rise and fall on the resolution of that question," *id.* at 757.

Ms. Callantine argues the complained-of conduct is identical across all class members, all of whom (1) faced the same statements from 4e that its product was safe and efficacious and (2) were injured from receiving allegedly unsafe, methanol-infused hand sanitizer. 4e responds that these assertions are conclusory, that she has not shown class members relied on its statements, and that both reliance and injury are individualized inquiries not suited for class resolution.

On reliance, Ms. Callantine cites the report of Dr. Anthony D. Andre, Ph.D., CPE, a human factors and ergonomics professor at San Jose State University [33-1]. Dr. Andre reviewed Ms. Callantine's complaint and images of 4e hand sanitizer, and he compiled a report on the product's labeling and consumer expectations. The report notes that customers generally expect healthcare products like hand sanitizer to be safe; that obligatory standards require labels to clearly indicate a dangerous product; that 4e's hand sanitizer labels signaled safety and effectiveness; and that the product lacked labels communicating the danger [*id.* 6-11]. The report concludes the product "was labeled in such a way as to induce the perception of safety among consumers," creating an assumption "that this product was safe and helpful, not dangerous and harmful" [*id.* 11].

7

4e fails to explain why this report inadequately supports Ms. Callantine's allegation that class members relied on statements on the hand sanitizer labels. The report discusses consumer expectations of safety, that they look to product labels to confirm these expectations, and that the hand sanitizer labels communicated indicia of safety. 4e does not refute this, and its mere suggestion that each class member may have purchased and consumed the product for different reasons is too vague at this stage—surely each member purchased it for its properties as hand sanitizer, including its safety and effectiveness.

Reliance aside, there is another central common question in Ms. Callantine's allegations: whether the hand sanitizer labels deceptively misrepresented the product's contents or properties under the IDCSA. Every member of the proposed class alleges they were injured because the product claimed it was safe and effective (because it contained ethyl alcohol) when it wasn't (because it contained methanol), and the answer to this liability issue would drive the case's resolution. Dr. Andre's report explains that the hand sanitizer labels made these claims [33-1 at 8-9, 11], and a 4e report says many batches contained methanol due to testing and control issues [44-1 at 1, 4, 5], so the issue has support in the record. The questions aren't so individualized to avoid class certification. Ms. Callantine has shown there are common questions of law and fact.

    D. *Ms. Callantine's Claims are Typical of the Proposed Class under Rule 23(a).*

Third, Ms. Callantine must show typicality. "Generally, a class representative's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory." *McFields v. Dart*, 982 F.3d 511, 517 (7th Cir. 2020) (citation and quotations omitted). The court focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citation and quotations omitted). For example, a plaintiff who claims to have been deceived about the saccharin in diet Coke cannot represent a class in which some members may have known that the soda had saccharin in it and continued to drink it anyway; that fact (knowledge)

8

would differentiate a deceptive marketing claim. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006).

Ms. Callantine argues her claims are typical because all class members bought the same product and their IDCSA claims turn on the issue of whether 4e's representations about the product were deceptive. In response, 4e points out that Ms. Callantine and her family sustained injuries that may differ from those experienced by proposed class members.

4e overlooks that Ms. Callantine's claims share the same essential characteristics as the proposed class's claims despite the details of her and her family's injuries. Ms. Callantine claims she and her family suffered economic injuries from purchasing a defective product, as well as health-related injuries from using a product that was harmful. Given the nature of methanol and the fact that hand sanitizer is usually applied to one's skin, one would expect many class members to have some mix of economic and health-related injuries too. Regardless of the precise mix, the IDCSA provides the greater of actual or statutory damages to any person who relied on an incurable deceptive act. Because each proposed class member is bringing comparable claims under the IDCSA for the same course of conduct, Ms. Callantine's claims are representative of the class's claims—thus typical.

E.  *Ms. Callantine Will Fairly and Adequately Protect the Proposed Class's Interests.*

Ms. Callantine must show she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (citations, quotations, and brackets omitted).

If a lead plaintiff's "claim is atypical, [she] is not likely to be an adequate representative; [her] incentive to press issues important to the other members of the class will be impaired." *Robinson v. Sheriff of Cook Cnty.*, 167 F.3d 1155, 1157 (7th Cir. 1999) (citing *Falcon*, 457 U.S. at 157 n.13). Courts look for

9

conflicts of interests or divergent interests, but "the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses does not prevent class certification." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 610 (7th Cir. 2021) (citation and quotations omitted). Likewise, speculative or hypothetical conflicts do not foreclose class certification. *See Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009).

Ms. Callantine argues her incentives are aligned with those of the proposed class because they all aim to demonstrate liability under the IDCSA and seek the greater of actual or statutory damages. 4e says the class's incentives diverge because Ms. Callantine and her family suffered unique injuries and thus seek damages that differ from other members of the proposed class. 4e again argues that there is no evidence that her hand sanitizer contained methanol, but that just is wrong on this record [44-3].

4e does not argue why the extent of Ms. Callantine's injuries would change her incentives, only that they might be different. It is not necessary for members of a class to have identical damages. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("It would drive a stake through the heart of the class action device . . . to require that every member of the class have identical damages."). If anything, the fact that Ms. Callantine says she suffered statutory, economic, and personal injuries suggests her incentives cover those of the entire proposed class—*i.e.*, those of members who suffered one, two, or all three types of harms. She is incentivized to pursue reasonable relief for each harm, for herself and the class. Even so, these differences may be immaterial given Ms. Callantine's uncontradicted assertion that individual damages are largely limited to statutory damages. Her claims are typical, her injuries are like those of other proposed members, and there is no indication that her interests diverge from those of the proposed class. Ms. Callantine is an adequate class representative.

F.   *The Proposed Class Also Meets the Rule 23(b)(3) Requirements.*

Having decided that Ms. Callantine's proposed class meets the Rule 23(a) certification prerequisites, the court assesses the class under Rule 23(b)(3). She must show that (1) questions of law or

fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). This must be supported by evidence. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

    1. *Common Questions Predominate Over Individual Ones.*

Ms. Callantine must first show that common issues predominate over individual issues. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citation omitted). The court must "give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member," whereas "a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Id.* (italics added; quotations and citation omitted). The court asks "whether the common, aggregation-enabling[] issues in the case are more prevalent or important than the non-common, aggregation-defeating[] individual issues." *Id.* (quotations and citation omitted). When central issues common to the proposed class predominate, certification under Rule 23(b)(3) is proper. *See id.* (citation omitted).

The predominance standard builds on Rule 23(a)(2)'s commonality requirement but is more demanding. *Howard*, 989 F.3d at 607 (citation omitted). It is "a qualitative assessment," *Butler*, 727 F.3d at 801, of whether common questions "represent a significant aspect of a case," *Ross v. Gossett*, 33 F.4th 433, 439 (7th Cir. 2022) (citation omitted), not a determination of "whether there are more common issues or more individual issues, regardless of relative importance," *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). "Individual questions need not be absent," *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012), and the "mere possibility of other legal theories or individual cases is

11

insufficient to defeat predominance," *Ross*, 33 F.4th at 441. Evaluating predominance "begins with the elements of the underlying claim." *Howard*, 989 F.3d at 607 (citation omitted); *see also Eddlemon*, 65 F.4th at 339-40. In determining whether to certify a consumer fraud class, the court also must assess "whether the plaintiffs' 'damages are susceptible of measurement across the entire class.'" *Suchanek*, 764 F.3d at 760 (quoting *Comcast*, 569 U.S. at 35).

Ms. Callantine says common questions predominate because all proposed class members were subjected to the same wrongful conduct (the same deceptive representations from 4e) and class members will largely pursue the same statutory damages due to having relatively modest injuries. She notes that most of the liability analysis will concern events before any hand sanitizer shipped, namely how 4e evaluated production inputs after switching suppliers. 4e responds that too many individualized questions exist to justify certification—namely, whether members' products contained methanol and the extent of injuries.

Ms. Callantine advances only an IDCSA claim for class certification. To succeed, she will need to demonstrate that 4e was a "supplier" that committed a "deceptive act." *See* Ind. Code § 24-5-0.5-3. For purposes of this case, this involves showing that 4e represented in writing that its hand sanitizer was ethanol-based, safe, and effective, although it knew or should have known the product instead contained methanol, was unsafe, and was ineffective. 4e made these representations on its product labels—across all its sales it seems—and produced its hand sanitizer in uniform batches, so a contaminated input would likely affect an entire batch.

Ms. Callantine has not offered specific information about the value of her claims or the anticipated values of class member claims. To 4e's credit, it is reasonable to assume that personal injuries from use of defective hand sanitizer may diverge among certain class members and may call for differential relief. But 4e overstates the significance of this individualized issue. Ms. Callantine posits that individual damages will be largely limited to statutory damages, and 4e does not contradict this in force.

Because the value of such damages is essentially determined by one's membership in the class, they are "susceptible of measurement across the entire class." *Comcast*, 569 U.S. at 35; *see Suchanek*, 764 F.3d at 760. Thus, individualized inquiries are likely a minor concern, not one that predominates.

To the extent that the odd proposed class member's damages are larger, that member would likely still prefer class representation and statutory damages unless their injuries are substantial enough to justify proceeding individually. *See Amchem*, 521 U.S. at 617 (observing that class actions provide recourse for persons with small recoveries). If that is the case, they have "a right to opt out . . . and bring their own lawsuit with their own counsel." *Bash v. Firstmark Standard Life Ins. Co.*, 861 F.2d 159, 163 (7th Cir. 1988) (citing Fed. R. Civ. P. 23(c)(2)).

Turning now to "the matters identified in Rule 23(b)(3)," *Suchanek*, 764 F.3d at 760 (citing *Amchem*, 521 U.S. at 615-16), evidence concerning supplier input testing, product contents, and expert testimony about representation suffices for each member of the proposed class. Ms. Callantine submits documentation to support her allegations on these subjects, namely 4e's investigation report describing the seeming inadequacy of its testing [44-1 at 2, 5], records detailing the contamination of certain product batches [*id.* 3-4], and the report from Dr. Andre on product labels and consumer expectations [33-1]. Because this evidence is the same for each proposed member's IDCSA claim, the claim is susceptible to class-wide proof. *See Suchanek*, 764 F.3d at 760-61. To the extent that discrete investigation is needed to identify the size of the class, 4e should have information about the distribution and recall of contaminated batches—a more generalized and direct evaluation than, say, individual testing of retail products. The parties have both indicated this information exists, citing FDA recall notices and 4e's internal records [*see* 39-2 at 2-5; 39-3 at 2-3; 44-1 at 3-4; 44-2 at 2-4]. These liability and class composition issues are common questions, and they will likely be a focus of this case. Given the weight of common questions on damages, liability, and composition, common issues predominate.

2. *Class Action is the Superior Method of Adjudication.*

In evaluating superiority, the court's considerations include, without limitation, class members' interests in controlling their own litigation individually, the character of any related lawsuits already pending, the desirability of aggregating claims in this forum, and any likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D); *Amchem*, 521 U.S. at 615-16 (observing that the Rule 23(b) factors are "nonexhaustive"). The court must weigh both costs and benefits. *See Mullins*, 795 F.3d at 663.

4e does not mount specific arguments against the superiority of class action, but it elsewhere argues that class members could more adequately redress their unique personal injuries through individual suits. The challenge is that individual claims are likely low value, and "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). "A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* This is why class action is an important device to vindicate the rights of consumers subjected to a deceptive practice. *Suchanek*, 764 F.3d at 759-60. Moreover, aggregation allows a class action to "serve the economies of time, effort and expense and prevent inconsistent results." *Ross*, 33 F.4th at 440. These benefits appear to be recognized in the IDCSA, which contemplates the availability of class actions to vindicate related deception claims. *See* Ind. Code § 24-5-0.5-4(b).

Neither party presents reasons why this forum would be desirable or undesirable, and 4e merely notes the existence of two pending state court actions without describing their scope or maturity, so the court attributes little weight to these factors. As for case management, "a class action has to be unwieldy indeed before it can be pronounced an inferior alternative," *Carnegie*, 376 F.3d at 661, and there is no reason to believe that any challenges in facilitating this class action lawsuit would not be at least replicated in individual suits.

Still, there is one management issue presented by the proposed class definition that can be easily addressed. The proposed class is defined based on whether the member purchased certain hand sanitizer that contains methanol. This definition leaves open the possibility that an action could proceed with an individualized inquiry into the chemical contents of each member's hand sanitizer. Ms. Callantine explains that these inquiries are not required—class members could be identified based on whether the products they purchased are from lots 4e identified as contaminated through extensive testing, a process comparable to that followed by 4e in its recall strategy. To ward off the possibility of future case management issues, Ms. Callantine will be required to present a trial plan describing a streamlined procedure for identifying class members. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013) (describing a trial plan as "reasonable" given the difficulty of managing a class action). Accordingly, a class action is the superior mode of action for this suit. As Ms. Callantine has satisfied the relevant parts of Rules 23(a) and (b), the court will certify the class.

G.  *Proposed Class Counsel Satisfies Rule 23(g).*

Because the court must also appoint class counsel, and the law firm of Pfeifer Morgan & Stesiak LLP is the lone applicant, the court evaluates whether counsel meets the relevant requirements from Rule 23(g)(1). *See* Fed. R. Civ. P. 23(g)(1), (2), (4); *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 919 (7th Cir. 2011) (Rule 23(g) factors are used "to guide the court in assessing proposed class counsel as part of the certification decision"). 4e has not contested their qualifications.

The attorneys from Pfeifer Morgan have backgrounds in personal injury, consumer protection, and IDCSA lawsuits, as well as experience with class actions involving consumer claims. They have done significant work investigating potential claims, including preserving class claims in related bankruptcy proceedings [33-2] and soliciting the assistance of an expert in human factors an ergonomics [33-1]. Both acts are also indicative of their capacity to commit resources to representing the class. Indeed, they are experienced and skilled counsel. The court will appoint Pfeifer Morgan & Stesiak as class counsel.

CONCLUSION

Ms. Callantine has satisfied all the requirements of Rules 23(a) and 23(b)(3). Accordingly, the court GRANTS the motion [32] and CERTIFIES the following class for count 4 claims under the Indiana Deceptive Consumer Sales Act: all Indiana residents who, within two years of August 11, 2020, purchased any type of Blumen hand sanitizer placed into the stream of commerce by 4e Brands or its affiliates or related companies that contained methanol as an active ingredient. The court also DESIGNATES Ms. Callantine as the class representative, APPOINTS Ms. Callantine's counsel as class counsel, and GRANTS Ms. Callantine's motion to seal [52]. The court ORDERS the parties to confer concerning appropriate notice to the class and a trial plan and to file the proposed notice and trial plan (with any separate objections) by December 20, 2024.

SO ORDERED.

November 27, 2024                              *s/ Damon R. Leichty*
                                               Judge, United States District Court